UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ASHWOOD COMPUTER CO., INC.,         CASE NO.: 1:15-cv-618

        Plaintiff,         Judge Michael R. Barrett

   v.

BLUEGRASS AREA DEEVLIOPMENT
DIST.

        Defendant.

**OPINION AND ORDER**

This matter is before the Court on Defendant Bluegrass Area Development District's Motion to Dismiss for Lack of Personal Jurisdiction, Motion to Dismiss for Improper Venue, or In the Alternative to Transfer Venue. (Doc. 5). Plaintiff Ashwood Computer Company, Inc. has filed a response in opposition (Doc. 15), and Defendant Bluegrass Area Development District has filed a reply (Doc. 18).

**I.    BACKGROUND**

This is a diversity action wherein Ashwood Computer Company, Inc. ("Ashwood"), an Ohio corporation with its principal place of business in Cincinnati, brings claims for breach of contract, promissory estoppel, unjust enrichment, and business libel and slander against Bluegrass Area Development District ("BGADD"), a 501(c)(1) organization and one of fifteen area development districts in the Commonwealth of Kentucky established under Kentucky Revised Statutes § 147A.050(15) with a principal place of business in Lexington, Kentucky. (Doc. 1). The claims stem from a Sales Agreement between the parties that was executed by Ashwood's President on December 19, 2014 and by BGADD's Executive Director on or about January 28, 2015. (Doc. 1, PageId 8).

1

Ashwood specializes in providing programming services assistance and systems support services for MultiValue database users across the United States. (Doc. 15-2, PageId 107). It is a full service VAR and systems integrator with extensive experience assisting Unix, Linux, and Windows based legacy MultiValue computer systems users. (Doc. 15-2, PageId 107). Ashwood offers a complete end-to-end Service Support Solution for customers. (Doc. 15-2, PageId 83). Ashwood does not have a business location, sales offices, or any marketing agent in Kentucky. (Doc. 15-2, PageId 107-08). All of its employees are located in Cincinnati. (Doc. 15-2, PageId 108). The majority of Ashwood's work is performed from its offices, and it delivers its end product or service online to its customers. (Doc. 15-2, PageId 108).

Ashwood and BGADD have been doing business together for over twenty-five years. (Doc. 15-2, PageId 109). During that time, BGADD has known that Ashwood is located in Cincinnati and that most of its services were provided from Cincinnati. (Doc. 15-2, PageId 109). Indeed, BGADD had purchased a number of software licenses from Ashwood and had requested technical support from Ashwood employees in Cincinnati on a regular basis from the time the company was formed. (Doc. 15-2, PageId 109). BGADD also has paid to Ashwood in Cincinnati the monthly fees to continue and service the software licenses that BGADD had purchased. (Doc. 15-2, PageId 109).

The Sales Agreement at issue in this case arose from a Corrective Action Plan implemented by the Kentucky Education and Workforce Development Cabinet under which the BGADD was required to procure a new accounting software platform capable of meeting all generally accepted accounting principles for non-profits and capable of handling the administration of federal and Kentucky grant programs. (Doc. 5-1, PageId 45). The prior

accounting system software that integrated with database software licensed by Ashwood to BGADD was more than twenty-five years old. (Doc. 15-1, PageId 102).

According to Ashwood, the Executive Director of BGADD contacted Ashwood in April 2014 to inform him about the pressure to upgrade BGADD's accounting software and that BGADD would be seeking bids. (Doc. 15-1, PageId 102). BGADD's Executive Director asked if Ashwood could provide the specifications for the bid. (Doc. 15-1, PageId 102; Doc. 15-3, PageId 122). Thereafter, Ashwood spent a few hundred hours of development work on a product called *Foremost ERP®* and demonstrated that product to BGADD's management on July 22, 2014 from Cincinnati via video conference. (Doc. 15-1, PageId 102). Discussions concerning changes to the software and the implementation of the software continued into October 2014 and after, which included an on-site demonstration of the *Foremost ERP®* application and several online demonstrations for BGADD personnel. (Doc. 15-1, PageId 103). Ashwood spent approximately seven hundred hours developing the *Foremost ERP®* application for BGADD up until that point, and most of that development work had taken place in Ohio. (Doc. 15-1, PageId 104).

As a public agency subject to Kentucky's Procurement Statute (Kentucky Rev. Code §§ 45A.345-45A.460), BGADD issued a public Request for Proposals ("RFP") on December 11, 2014. (Doc. 5-1, PageId 45). Notice of the RFP was published in the Lexington Herald-Leader on the same date. (Doc. 5-2, PageId 47). The RFP required bidders to submit their proposals to BGADD offices in Lexington, Kentucky, where they were opened at 4:00 p.m. on January 8, 2015. (Doc. 5-1, PageId 45). BGADD used the *Foremost ERP®* application that Ashwood had developed to assist in creating the bid specifications. (Doc. 15-1, PageId 103).

According to BGADD, Ashwood contacted BGADD after publication of notice of the RFP and requested a full copy of the RFP and specifications. (Doc. 5-1, PageId 45). Ashwood indicates, however, that BGADD's management contacted Ashwood and requested Ashwood to bid on the project. (Doc. 15-1, PageId 103-04). Ashwood states that it was personally emailed a copy of the notice of request for bids and a copy of the bid specifications by the Executive Director and others at BGADD, after following up on the request to bid. (Doc. 15-1, PageId 104; Doc. 15-3, PageId 125-27). In the end, Ashwood submitted the only bid at an amount of $56,144.00. (Doc. 5-1, PageId 45; Doc. 15-1, PageId 104). The bid was submitted via hand delivery to BGADD offices on January 8, 2015. (Doc. 5-1, PageId 45).

On January 27, 2015, Ashwood representatives traveled to Lexington to attend a meeting of and respond to questions from BGADD's Executive Committee. (Doc. 5-1, PageId 45-46). At the meeting, Ashwood representatives stated that the tasks in its bid could be done in an average of three months and that a reasonable estimate was three to six months. (Doc. 5-1, PageId 46). The Executive Committee selected Ashwood as the software vendor, and BGADD's Executive Director thereafter signed the Sales Agreement at BGADD's offices on January 28, 2015. (Doc. 5-1, PageId 45; Doc. 5-4, PageId 50; Doc. 15-3, PageId 113). The Sales Agreement was to be construed and governed by the laws of the State of Ohio. (Doc. 15-1, PageId 104; Doc. 15-3, PageId 114). The Executive Director of BGADD also agreed that Ashwood would retain ownership of the software and it would grant a limited license to use the new accounting and payroll system. (Doc. 15-1, PageId 104; Doc. 15-3, PageId 114). BGADD's goal was to complete implementation of the accounting software by July 1, 2015, the first day of the fiscal year. (Doc. 5-1, PageId 46). BGADD indicates that it communicated that deadline verbally to Ashwood on multiple occasions. (Doc. 5-1, PageId 46).

According to BGADD, it believed, based on the representations made to it by Ashwood, that the contract with Ashwood included a fully functioning accounting software platform, installation of the software on BGADD servers, training for its staff on how to use the software, migration of the BGADD data to the new software, and 100 hours of minor customizations to the software to meet BGADD's needs. (Doc. 5-1, PageId 46).

Ashwood indeed installed the software on a server located in BGADD offices in Kentucky. (Doc. 5-5, PageId 53). According to BGADD, however, the software required significantly more modification and customization than BGADD had anticipated, as it did not include, for example, the capability to reconcile bank statements, allocate indirect costs, or collect information for vendor 1099 forms. (Doc. 5-5, PageId 53). Ashwood contends that BGADD's requests went far beyond the bid specifications, and that such requests were made by phone calls and emails to Cincinnati. (Doc. 15-1, PageId 105). According to Ashwood, BGADD routinely telephoned Ashwood or went online and logged into Ashwood's office in Ohio to report an issue they were having with BGADD's system or to request technical assistance. (Doc. 15-2, PageId 110). Ashwood staff worked on the software by logging in remotely from Ohio to BGADD servers in Kentucky or by traveling to BGADD offices. (Doc. 5-5, PageId 53). Ashwood staff made multiple trips to BGADD offices to meet with BGADD's staff regarding implementation of the software. (Doc. 5-5, PageId 53). At least one BGADD staff person made a trip to Ohio to provide feedback to Ashwood on the software. (Doc. 5-5, PageId 53). Ashwood spent a total to four hundred and forty-seven hours on the further development, installation, and testing of the software and on the improvements and changes to the application that were requested on behalf of BGADD. (Doc. 15-2, PageId 111). Ninety-eight of those hours were spent on-site at BGADD. (Doc. 15-2, PageId 111).

When the software implementation still was not complete by early September 2015, BGADD sent Ashwood a notice of termination of the Sales Agreement on or about September 15, 2015 in accordance with the agreement. (Doc. 5-1, PageId 46; Doc. 5-5, PageId 53).

BGADD submitted approximately three payments to Ashwood in addition to travel reimbursements. (Doc. 5-5, PageId 53). Its decisions regarding payments were made at its offices in Lexington. (Doc. 5-5, PageId 53). Ashwood contends that BGADD was required to, but did not, pay Ashwood for the work on the project up through the completion of the project in accordance with the agreement. (Doc. 15-1, PageId 106; Doc. 15-3, PageId 113-15).

## II. ANALYSIS

BGADD moves for dismissal based upon lack of personal jurisdiction. Alternatively, BGADD moves for either dismissal based upon improper venue or the transfer of venue.

### A. Personal Jurisdiction

The plaintiff bears the burden of proving personal jurisdiction exists over an out-of-state defendant. *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996)). In the face of a supported motion to dismiss, the plaintiff may not rest on his pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). However, when a court considers a motion to dismiss pursuant to Rule 12(b)(2) without conducting an evidentiary hearing, the plaintiff must make only a prima facie showing of jurisdiction and the court must consider the pleadings and affidavits in the light most favorable to the non-moving party—here, Ashwood. *Beydoun*, 768 F.3d at 504 (citing *CompuServe*, 89 F.3d at 1262).

The Sixth Circuit has established a two-step inquiry for a district court to follow when determining whether it can exercise personal jurisdiction over a defendant:  (1) whether the law of the state in which the district court sits authorizes jurisdiction; and (2) whether the exercise of jurisdiction comports with the Due Process Clause.  *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citing *Int'l Techs. Consultants v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997)); *CompuServe*, 89 F.3d at 1262.

### 1.  Long-Arm Statute

There are two kinds of personal jurisdiction:  general jurisdiction and specific jurisdiction.  *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996) ("Jurisdiction may be found to exist either generally, in cases in which a defendant's 'continuous and systematic' conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state . . . or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum."); *see also PT Pukuafu Indah v. United States SEC*, 661 F.3d 914, 920 (6th Cir. 2011) ("specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction") (internal quotations omitted).

There has been some debate as to whether Ohio courts recognize general jurisdiction. *See Indus Trade & Tech., LLC v. Stone Mart Corp.*, No. 2:11-cv-637, 2011 U.S. Dist. LEXIS 144668, at *6-8 n. 1 (S.D. Ohio Dec. 14, 2011) (describing split on whether general personal jurisdiction is recognized under Ohio law).  The Sixth Circuit, however, has stated that "under Ohio law, a court may exercise personal jurisdiction over a non-resident defendant only if specific jurisdiction can be found under one of the enumerated bases in Ohio's long-arm statute." *Conn v. Zakharov*, 667 F.3d 705, 718 (6th Cir. 2012); *see also Lexon Ins. Co. v. Devinshire Land*

*Dev., LLC*, 573 F. App'x 427, 429 (6th Cir. 2014) (same as *Conn*). Accordingly, this Court will not consider whether general jurisdiction exists over BGADD and, instead, will address only the issue of specific jurisdiction under Ohio Revised Code § 2307.382. *See Stone v. Twiddy & Co of Duck, Inc.*, No. 1:10-cv-591, 2012 U.S. Dist. LEXIS 104738, at *7 (S.D. Ohio July 27, 2012).

For specific jurisdiction, Ashwood relies on Ohio Revised Code § 2307.382(A)(1). (Doc. 15, PageId 91-94). That provision allows a court to "exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting [of] any business in this state[.]" Ohio Rev. Code § 2307.382(A)(1). The "transacting any business" prong is to be construed broadly to permit jurisdiction over non-resident defendants who are transacting any business in Ohio that is proximately related to the plaintiff's cause of action. *Lexon Ins. Co. v. Devinshire Land Dev., LLC*, 573 F. App'x 427, 429 (6th Cir. 2014) (citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73 (1990); *Brunner v. Hampson*, 441 F.3d 457, 465-66 (6th Cir. 2006)). There are two factors that have been used to help determine whether an out-of-state defendant "transacted any business" within the meaning of the long-arm statute:

> "The first factor is whether the out-of-state defendant initiated the business dealing. . . . If the defendant reached out to the plaintiff in the forum state to create a business relationship, the defendant transacted business in the forum state. . . . The second factor is whether the parties conducted their negotiations or discussions in the forum state or with the terms affecting the forum state. . . . If the parties negotiated in the forum state with provisions affecting the forum state, the defendant transacted business in the forum state."

*Shaker Constr. Group, LLC v. Schilling*, No. 1:09-cv-278, 2008 U.S. Dist. LEXIS 79645, at *9 (S.D. Ohio Sept. 18, 2008) (quoting *Paglioni & Assocs. v. WinnerComm, Inc.*, No. 2:06-cv-276, 2007 U.S. Dist. LEXIS 18612 (S.D. Ohio Mar. 16, 2007)). *Accord*: *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 161 (S.D. Ohio 2012) (applying the two-factor test when determining whether personal jurisdiction exists under Ohio's long-arm statute).

8

When the facts are construed in the light most favorable to Ashwood, both factors support a finding of personal jurisdiction. As to the first factor, Ashwood has set forth facts to show that BGADD initiated the contact with Ashwood with respect to providing the specifications for the bid and with respect to submitting a bid after the publication of the RFP. (Doc. 15-1, PageId 102-04; Doc. 15-3, PageId 122, 125).

With respect to the second factor, Ashwood has shown that the negotiations, as well as the terms of the agreement, affected Ohio. Negotiations pertained to a software program developed and customized by Ashwood in Ohio for the benefit of BGADD and at BGADD's request, which was then to be installed on a server located in BGADD offices in Kentucky. (Doc. 15-1, PageId 102-05; Doc. 15-2, PageId 110-11; Doc. 15-3, PageId 113). Under the Sales Agreement, the ownership of the software program was to remain with Ashwood in Ohio, even though the license would be held by BGADD in Kentucky, and BGADD was to continue to pay monthly license and maintenance costs to Ashwood. (Doc. 15-3, PageId 113, 115). The Sales Agreement also plainly indicates that Ashwood is located in Ohio. (Doc. 15-3, PageId 114-15). As a whole, the facts show that BGADD voluntarily entered into a contract with Ashwood and subjected itself to continuing duties and obligations to Ashwood for the life of the contract.

In addition to those considerations, it also is relevant that BGADD had ongoing communications with Ashwood via teleconferences (including logging into Ashwood's computer system in Ohio to view the demonstration), emails and telephone calls initiated by BGADD, and at least one on-site visit to Ashwood in Ohio by a BGADD staff member (Doc. 15-1, PageId 106). *See Dayton Superior Corp.*, 288 F.R.D. at 161-62 (citing a variety of circumstances under which courts have found personal jurisdiction under the "transacting any business" prong).

9

This case is similar to *Kentucky Oaks Mall Company v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73 (1990), a case relied upon by Ashwood, where the Ohio Supreme Court determined that a commercial non-resident lessee is "transacting any business" under Ohio Revised Code § 2307.382(A)(1) where the lessee negotiates, and through the course of dealing becomes obligated, to make payments to its lessor in Ohio. *Id.* at 76. It was sufficient in that case that the non-resident lessee negotiated the contract by telephone contact to Ohio with an Ohio-based company and voluntarily entered into a ten-year contract by signing the document in Georgia and mailing it to Ohio thereby creating ongoing duties and obligations. *Id.* Although BGADD attempts to distinguish *Kentucky Oaks* based on the fact that it involved a ten-year lease that created the ongoing duties and obligations instead of a one-time software purchase to be implemented in three months, that distinction is unavailing. Construing the facts most favorably to Ashwood, the Sales Agreement contemplated an ongoing relationship by virtue of granting only a license to BGADD as well as including continuing license and maintenance costs and additional hours of Ashwood's development services. (Doc. 15-3, PageId 113-14, 120).[1]

As for *Shaker Construction Group, LLC v. Schilling*, No. 1:09-cv-278, 2008 U.S. Dist. LEXIS 79645, at *5-11 (S.D. Ohio Sept. 18, 2008), a case relied upon by BGADD, it is distinguishable from the present case. In *Shaker*, the district court concluded that neither of the two factors supported personal jurisdiction. *Id.* at *10-11. But unlike in the present case, *Shaker* involved no allegations in support of the first factor that would show defendants initiated the negotiations. *Id.* at *10. To the contrary, the plaintiff had stated that another company, rather than the defendants at issue, approached the plaintiff about participation in the project. *Id.* Also unlike the present case, there were no allegations in *Shaker* that either the negotiations, which

---

[1] It is further noted that the Software Support Agreement signed on the same date as the Sales Agreement explicitly provides for an initial term of two years, which was to continue thereafter on a monthly basis subject to certain terms and conditions. (Doc. 15-3, PageId 120).

10

pertained solely to a project in Mississippi, or the terms of the agreements affected Ohio in any way. *Id.* at *10-11.

Accordingly, the Court concludes that Ashwood has met its burden of showing that specific jurisdiction exists over BGADD pursuant to Ohio Revised Code § 2307.382(A)(1).

### 2. Due Process

Where a plaintiff establishes specific jurisdiction under the Ohio long-arm statute, the court must also consider whether that jurisdiction comports with due process. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)); *see also Fraley v. Estate of Oeding*, 138 Ohio St. 3d 250, 257 (2014) ("[E]ven satisfaction of the long-arm statute does not justify the exercise of jurisdiction unless that exercise also comports with the defendant's constitutional right to due process."). To comport with due process, the defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

The Sixth Circuit has established a three-part test to determine whether personal jurisdiction under Ohio's long-arm statute satisfies the due process requirements. *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 430 (6th Cir. 2006) (citing *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968)). "'First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.'" *Burnshire*, 198 F. App'x at 430 (quoting *Southern Machine Co.*, 401 F.2d at 381). "'Second, the cause of action must arise from the defendant's activities there.'" *Id.* "'Finally, the acts of the defendant or consequences caused by the defendant must have a

substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'" *Id.*

Here, the exercise of personal jurisdiction over BGADD comports with due process. First, the "purposeful availment prong of the constitutional analysis is coextensive with the 'transacting any business' standard of Ohio's Long-Arm Statute." *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 164 (S.D. Ohio 2012) (citing *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 429 (6th Cir. 2006)). Having found that Ashwood has satisfied the "transacting any business" standard of Ohio's long-arm statute, the Court likewise concludes that Ashwood has satisfied the "purposeful availment" prong of the constitutional standard. As explained with respect to the "transacting any business" prong, this is not a case where BGADD's contact with Ashwood in Ohio was random, fortuitous, or attenuated. BGADD instead deliberately engaged Ashwood to assist with the new software program and specifications, purposefully entered into a contract that was governed by Ohio law with knowledge that Ashwood was located and performed much of its work in Ohio, and intentionally created continuing obligations between itself and Ashwood arising from the contract.

Second, "[t]he Sixth Circuit has found that the requirement that contacts be the proximate cause of the asserted harm under Ohio's Long-Arm Statute is more restrictive than the 'arising from' standard applicable to the Due Process analysis." *Dayton Superior*, 288 F.R.D. at 164 (citing *Burnshire*, 198 F. App'x at 430 n.2); *see also Schneider v. Hardesty*, 669 F.3d 693, 703 (6th Cir. 2012) (recognizing that "arising from" is a lenient standard). Here, the operative facts relate to a breach of contract and related claims concerning a software program developed by an Ohio company primarily in response to the request of BGADD to the Ohio-based company, and pursuant to agreements reached between the parties concerning the software program that were

governed by Ohio law. Further, BGADD knew that communications were being directed to Ashwood in Ohio and it reasonably could have anticipated that the harm caused by the alleged breach and other related actions would cause harm in Ohio.

Finally, the "substantial connection" prong requires that the acts of the defendant or the consequences caused by the defendant have a substantial enough connection to Ohio to make the exercise of jurisdiction over the defendant reasonable. *Dayton Superior*, 288 F.R.D. at 164. When "the first two prongs of the Due Process analysis are satisfied, 'an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion.'" *Id.* (quoting *Genesis Insurance Co. v. Alfi*, 425 F. Supp. 2d 876, at 893 (S.D. Ohio 2006)); *see also Schneider*, 669 F.3d at 704. Factors considered under the "substantial connection" prong include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering fundamental social policies. *Schneider*, 669 F.3d at 703-04; *Dayton Superior*, 288 F.R.D. at 164. In the present case, Ashwood has demonstrated that the consequences have a substantial connection to Ohio so as to make the exercise of jurisdiction over BGADD reasonable. Not only do the parties have a long-standing business relationship, but Ohio also has an interest in adjudicating the dispute to ensure its resident receives the benefit of its bargain, particularly when BGADD received fair notice via the agreement that it would be subject to Ohio law and, thus, possibly a lawsuit in Ohio. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 78 (1990); *see also Schneider*, 669 F.3d at 704. The burden to BGADD, a non-resident defendant, in defending in this forum is minimal given the modern technological conveniences as well as the short distance between the location of BGADD and

this Court. *Schneider*, 669 F.3d at 704. BGADD has not otherwise convincingly demonstrated that the exercise of personal jurisdiction over it would be fundamentally unfair.

Accordingly, the exercise of personal jurisdiction over BGADD comports with due process.

### B. Improper Venue/Transfer of Venue

Pursuant to 28 U.S.C. § 1406(a), "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." At issue here is 28 U.S.C. § 1391(b)(2), which provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]"

Venue is proper in this case under Section 1391(b)(2). As explained previously, the Court has personal jurisdiction over BGADD. The events giving rise to Ashwood's various claims stem from the agreement between Ashwood and BGADD for Ashwood's development and implementation of a software program for BGADD. The current record indicates that BGADD initiated the relationship with Ashwood for the development of software program in Ohio even prior to the agreement being entered into between the parties, which eventually led to Ashwood being the only bidder on the project. The software program also continued to be owned by Ashwood, even though BGADD was to receive a license for use in Kentucky. Further, many of BGADD's communications regarding the software program were directed to Ohio, including its notice of termination of the agreement. While the Court recognizes that many other communications and decisions also were directed towards or occurred in Kentucky, the Court finds that the current record as a whole satisfies Section 1391(b)(2).

Accordingly, the Court declines to dismiss or transfer pursuant to 28 U.S.C. § 1406(a).

### III. <u>CONCLUSION</u>

Consistent with the foregoing, Defendant Bluegrass Area Development District's Motion to Dismiss for Lack of Personal Jurisdiction, Motion to Dismiss for Improper Venue, or In the Alternative to Transfer Venue (Doc. 5) is **DENIED**. This case shall proceed as scheduled.

**IT IS SO ORDERED**.

s/Michael R. Barrett<br>
JUDGE MICHAEL R. BARRETT<br>
UNITED STATES DISTRICT COURT